IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MOZELLA ARMSTRONG                                                                    PLAINTIFF

V.                                              NO.  4:04CV00787 JWC

JO ANNE B. BARNHART,                                                              DEFENDANT
Commissioner, Social
Security Administration

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mozella Armstrong, appeals from the denial of her claim for supplemental

security income and disability insurance benefits.  The decision of the Administrative Law

Judge (ALJ), dated September 23, 2002,[1] has become the final decision of the

Commissioner.  For the reasons that follow, the Court remands the case for further

administrative proceedings.

I.

Judicial review of the Commissioner's denial of benefits examines whether the

decision is based on legal error, and whether the findings of fact are supported by

substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Brown v. Barnhart, 390

F.3d 535, 538 (8th Cir. 2004).  Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.  Richardson v.

Perales, 402 U.S. 389, 401 (1971).

Plaintiff was born on November 6, 1962, has a high school education, and has past

work as a cook, production worker, insurance billing clerk, nursing home aide, and cashier.

---

[1] The pages in the record filed November 30, 2004, containing the ALJ's decision, were
incomplete; therefore all references to the ALJ's decision are to the supplemental record filed
January 12, 2005.

(Tr. 61, 77, 92.)  In her application documents and at the hearing before the ALJ on August 8, 2002, she alleged disability since her onset date of August 1, 2000, due to arthritis and joint problems affecting her neck, back, arms, hip, wrist, hands and knees, along with depression, headaches, and vision problems.  (Tr. 24-26, 28-29, 41, 61, 86.)

A claimant is disabled, within the meaning of the Social Security statutes and regulations, if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). § 1382c(a)(3).  The regulations provide a five-step process to determine whether a claimant is disabled.  See 20 C.F.R. § 404.1520, § 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  Basically, those procedures require the ALJ to take into account whether a claimant is working, whether the claimant's physical or mental impairments are severe, whether the impairments meet or equal an impairment listed in the regulations, whether the impairments prevent a resumption of work done in the past, and whether they preclude any other type of work.  Id.

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  The ALJ next determined, at step two, that Plaintiff suffered from the following severe impairments: arthralgias with chronic neck and back pain.  The ALJ found that none of her impairments, singularly or in combination, equaled a step-three listed impairment as contained in the regulations.  At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform work at the medium exertional level and could, therefore, perform her past relevant work.  The ALJ ended his analysis at that point, concluding that Plaintiff was not disabled.  (Tr. 14-18.)

Plaintiff asserts that the ALJ erred: (1) by failing to obtain treating or examining medical source opinions addressing Plaintiff's ability to perform work-related activities to support the residual functional capacity determination; (2) by failing to develop the record regarding Plaintiff's alleged vision impairment; (3) by conducting a "markedly abbreviated" hearing with inadequate evidence; (4) by failing to swear the vocational expert as a witness or lay any foundation for his testimony; (5) in evaluating Plaintiff's alleged mental impairments without discussing psychiatric treating source evidence and relying solely upon the opinion of a non-examining source; (6) in evaluating the credibility of Plaintiff's subjective complaints; (7) in basing his residual functional capacity determination solely upon non-examining, non-treating medical sources; and (8) in evaluating Plaintiff's past work.

## II.

To qualify as severe, an impairment must "significantly limit [a claimant's] physical or mental ability to do basic work activities," which are "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 404.1521, § 416.921.   An impairment or combination of impairments is not severe if it would have no more than a minimal effect on the claimant's ability to work.  Simmons v. Massanari, 264 F.3d 751, 755 (8th Cir. 2001). Some of the specified activities involved in work are understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(3)-6), § 416.921(b)(3)-(6).

Here, the ALJ found that Plaintiff had no "severe" mental impairment.  He noted that she had complained of depression, had testified during the hearing that she often felt angry

and lethargic, and had sometimes used alcohol excessively, which would exacerbate depressive symptoms.  He found that her depression was a "mild problem" that was "controlled with medication and [did] not have more than a minimal effect on [her] ability to perform work-related activities."  He stated that he had applied the "psychiatric review technique" and found that her mental condition caused no more than mild limitations in the areas of daily living, social functioning, concentration and pace, and that it had not resulted in any episodes of decompensation.  He also found that the evidence of record did not establish the presence of the criteria for meeting the required level of severity for a listed mental impairment.  (Tr. 15, 16.)  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 ("Affective Disorders").

In discussing the evidence in the record, the ALJ's opinion referred to medical evidence from only one physician who examined Plaintiff and assessed her alleged mental impairment: Michael Westbrook, M.D., a consultative physician who performed a general physical examination on August 9, 2001.  (Tr. 14, 130-37.)  In addition to his diagnostic findings regarding Plaintiff's physical problems, Dr. Westbrook stated that she suffered from "depression - controlled." (Tr. 136.)  The ALJ also referred to the opinion of a "state agency physician" that Plaintiff's depression was not severe.  (Tr. 15.)  This is a reference to the Psychiatric Review Technique form (PRTF) prepared by Brad Williams, Ph.D., a psychologist, and reviewed and approved by Kathryn Gale, M.D., on August 15, 2001, and again on October 10, 2001. (Tr. 148-61.)  Dr. Williams and Dr. Gale were agency state medical consultants who reached their conclusions based on a review of the evidence in the file, but did not examine Plaintiff.

Plaintiff contends that the ALJ erred in failing to discuss medical records emanating from three mental health evaluations of Plaintiff by other medical sources.  The first is an initial screening and assessment completed on October 11, 2001, by Mary Anne Seibert, Ph.D., a therapist, and reviewed on October 15, 2001, by Susan E. Schaefer, Ph.D., a licensed psychologist.  (Tr. 169-74.)  During the evaluation, Plaintiff told Dr. Seibert she had experienced recurrent depression for six months, with increased sleep and irritability, increased appetite, decreased concentration, and feelings of hopelessness and helplessness.  She said that, two or three times a month, she thinks she sees someone that no one else sees.  She reported taking Zoloft (an antidepressant), but said it was not effective.  In seeking treatment, she said she wanted to alleviate her depression and "be able to get out of bed."  Dr. Seibert diagnosed Plaintiff with major depressive disorder, recurrent, moderate, and she assessed a Global Assessment Functioning (GAF) score of 45.  (Tr. 173.)

Dr. Seibert referred Plaintiff to Richard Sundermann, Jr., M.D., a psychiatrist with Counseling Associates, Inc., for "psychiatric evaluation and possible medication treatment."  In an evaluation on October 22, 2001, Plaintiff told Dr. Sundermann that she needed help with depression because she was "feeling sad" and did not want to go anywhere or do anything.  She said her depression caused her to drink too much, and that her sleep was disrupted and she had gained weight.  She again said she took Zoloft, which did no good.  Although Dr. Sundermann saw "minimal evidence of a depressed mood at present," his diagnostic impression was: "Major Depressive Disorder, Recurrent, Mild to Moderate; Rule Out Depressive Disorder NOS; Rule Out Episodic Alcohol Abuse."  He prescribed a different antidepressant (Celexa) and advised Plaintiff that it was "paramount to severely

curtail or completely abstain from alcohol in order to optimize her chances for recovery." She was advised to return for follow-up in four weeks.  (Tr. 162-64.)

There is no evidence of a return visit to Dr. Sundermann, but Plaintiff did meet again with Dr. Seibert on October 25, 2001.  At that time, she reported still feeling depressed about her children living with her mother and about her mother's overbearing personality. Dr. Seibert said she utilized cognitive-behavior therapy to help Plaintiff learn to deal with her mother and reduce her depression.  (Tr. 175.)  There are no other records of any other visits or counseling sessions.  Plaintiff testified at the hearing that she missed three counseling appointments because she "just didn't feel like getting up and seeing nobody." (Tr. 27.)

None of the records from Dr. Seibert or Dr. Sundermann are mentioned in the ALJ's opinion or in Dr. Westbrook's records or the state agency PRTF upon which the ALJ relied in determining that Plaintiff's depression was not severe.  In fact, the PRTF predates Plaintiff's visits to Drs. Seibert and Sundermann and, therefore, could not have been a part of the medical evidence reviewed by the agency examiners.

Evidence to be considered in evaluating an alleged mental impairment includes: objective medical signs, i.e., "medically demonstrable phenomena that indicate specific psychological abnormalities"; other evidence from medical sources, such as medical history, opinions, and statements about treatment the claimant has received; and statements the claimant makes to medical sources about his or her impairments, restrictions, daily activities, efforts to work, or any other relevant matters.  20 C.F.R. § 404.1512(b)(1)-(3), § 404.1528(b), § 416.912(b)(1)-(3), § 416.928(b).  The ALJ is required to consider "every medical opinion" received from physicians, psychologists or other

acceptable medical sources.  Id. § 404.1527(d), § 416.927(d).  An opinion of a treating or examining medical source, particularly where the source is a specialist in the area at issue, is entitled to more weight than the opinion of a nonexamining source.  Id. § 404.1527(d) & (f), § 416.927(d) & (f).

Although a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency had no practical effect on the outcome of the case, the ALJ is not free to ignore medical evidence but rather must consider the whole record.  Reeder v. Apfel, 214 F.3d 984, 988 (8th Cir. 2000); see Duncan v. Barnhart, 368 F.3d 820, 823 (8th Cir. 2004) (ALJ cannot disregard opinion of psychotherapist simply because he is not a medical doctor).  An ALJ "must show that he evaluated all of the evidence before rendering a decision ... and may not discredit a claim by ignoring medical evidence." Gibson v. Secretary of Health & Human Services, 882 F.2d 329, 331 (8th Cir. 1989).

Other than assertions that he has reviewed "all of the evidence of record" (Tr. 13) nothing in the ALJ's opinion suggests that he considered the diagnoses, opinions and observations of Drs. Seibert and Sundermann, the objective medical signs supporting their diagnoses, or the information reported to them by Plaintiff.  If he did consider any of this evidence, his opinion is inadequate because he failed to explain how much weight he assigned the doctors' opinions or his reasons for discounting them.

Furthermore, the Court believes that the medical evidence from Drs. Seibert and Sundermann is material to the ALJ's step-two determination of severity, as well as the other steps in the sequential evaluation.

Both doctors, specialists in the mental health field, clearly diagnosed Plaintiff with recurrent major depressive disorder.  Additionally, Dr. Seibert found, on October 11, that

7

Plaintiff's GAF score was 45, due to primary support group, occupational and economic problems. A GAF of 41 to 50 indicates severe symptoms or serious impairment in social, occupational or school functioning, such as the inability to keep a job. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (DSM-IV).[2] While a GAF assessment in isolation is not necessarily dispositive, a GAF score in the identified range certainly indicates that Dr. Seibert believed Plaintiff was suffering from a mental impairment that more than minimally affected her ability to work.

Plaintiff told Dr. Sundermann that, when she has tried to work, she has been unable to do so because "it's always been a morning job and she can't get up." (Tr. 162.) She complained to Dr. Seibert that she had decreased concentration, irritability, and that she had isolated herself. (Tr. 169.) She also said she had been treated in 1992 for depression. (Tr. 172.)

The record contains other evidence supporting the finding of a severe mental impairment. In March 2000, Plaintiff complained to her primary care physician about irritability and temper flashes, and he prescribed an antidepressant. (Tr. 124.) As stated, Dr. Westbrook diagnosed Plaintiff with depression in August 2001, noting that she was taking Zoloft. (Tr. 130.) There is also a notation in the medical records of her primary care physician on February 28, 2002, that she was seeing another doctor for depression. (Tr. 166.)

Plaintiff testified at the hearing about her depressive symptoms and their affect on her ability to work. She testified that she had to quit her last job as a cook due to back

[2]The GAF scale is a 100-point scale used to report a clinician's judgment of an individual's overall level of psychological, social and occupational functioning. DSM-IV at 30-32.

8

problems and depression.  (Tr. 24.)  She said she could only sleep about thirty minutes during the night, and that she probably spent about four hours a day "just at home staying in the bed."  (Tr. 26.)  She said she had trouble with her memory and with keeping her mind on what she was doing, and that she "stay[ed] angry."  (Tr. 27.)  Her friend testified that he saw her everyday and that she had a "personality problem," which made her "changeable" from day to day.  (Tr. 30-31.)  In her questionnaires and other documents submitted in support of her disability applications, she repeatedly mentioned depression and related symptoms, stating that depression limited her ability to work (Tr. 86); that she "couldn't get to work on time" due to her pain and depression (Tr. 86); that she did not sleep well (Tr. 93); that she did not like being around a lot of people  (Tr. 95); that she "stays depressed" (Tr. 99); and that usually all she does is "sleep or lay in bed" (Tr. 98).  On June 15, 2001, she wrote, "I don't like being around people.  I can't [leave] the house for long.  I want to stay in bed."  (Tr. 98.)  On August 30, 2001, she wrote, "I don't want to leave the house at all."  (Tr. 100.)

This case must be remanded for reevaluation of whether Plaintiff's alleged depression constitutes a "severe" impairment at step two in light of the records of Dr. Seibert and Dr. Sundermann; whether the depression, in combination with her physical impairments, meets or equals a listed impairment at step three; whether her combined impairments prevent a  resumption of her past work at step four; and, if necessary, whether her impairments preclude any other type of work.  This will also require a reevaluation of Plaintiff's credibility and residual functional capacity, both of which require consideration of all statements and reports from the claimant and treating or examining medical sources.  See 20 C.F.R. § 404.1529, § 404.1545, § 416.929, § 416.945.  On remand, the ALJ may

also wish to obtain further evidence relating to Plaintiff's mental impairment.  Additionally, the ALJ must consider the combined impact of all impairments throughout the disability determination process.  Id. § 404.1523, § 416.923.  For these reasons, the Court will not reach the other points Plaintiff raises.


III.

ACCORDINGLY, it is, therefore, ORDERED that the Commissioner's decision is reversed and remanded for consideration in accord with this opinion.  This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and Melkonyan v. Sullivan, 501 U.S. 89 (1991).

IT IS SO ORDERED this 30th day of September, 2005.




_____
UNITED STATES MAGISTRATE JUDGE